1   Eduardo Hernández
    J37244 D10/121 PBSP/SHU
2   P.O. Box 7500
3   Crescent City, CA 95532
    IN PRO SE;

4
5   **UNITED STATES DISTRICT COURT FOR**
    **THE NORTHERN DISTRICT OF CALIFORNIA**
6
    EDUARDO HERNÁNDEZ,                    Case No.
7   Plaintiff,                           **CV 13-5633**
    V.
8   J. BEARD; M. CATE;                                        
    R.E. BARNS; G.D. LEWIS;
9   C. DUCART; G.W. OLSON;               **JURY TRIAL DEMAND**
    T. WOODS; F. VANDERHOOFVEN;
10  R. TUPY; T. CABRERA;                 **COMPLAINT FOR MONEY DAMAGS,**
    R. PRESLER; R. BUTCHER;              **DECLARATORY AND INJUNCTION**
11  G. PIMENTEL; D. YANG;                ( 42 U.S.C. § 1983 CIVIL RIGHTS ACTION )
    J. CLEMONS; T. OSTEN;
12  S. NAKAMURRA; LENTZ;
    M. CREED; M. McLEAN; RIECH;
13  AND DOES 1-20; INCLUSIVE,
    Defendants.
14
15                              **I. JURISDICTION**
16
17  1. This action is brought pursuant to 42 u.s.c. sections
18  1983 and 1985 to redress the violation(s)/deprivation(s),
19  under color of state law, of rights secured by the Con-
20  stitution of the United States. Jurisdiction is based
21  upon 28 u.s.c. sections 1331 (1) and 1343. The Court has
22  supplemental jurisdiction over plaintiff's state law
23  tort claims pursuant to 28 u.s.c. section 1367.
24  2. Plaintiff seeks declaratory relief pursuant to 28 u.s.c.
25  sections 2201, 2202 and Rule 57 of the Federal Rules of
26  Civil Procedure.
27  3. Plaintiff seeks injunctive relief pursuant to 28 u.s.c. sec-
28  tions 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

COMPLAINT

-1-

## II. VENUE

4. The Northern District of California is a propriate venue under 28 U.S.C. §1391(b)(2) because it is where these unlawful acts and/or omissions giving rise to the claims occurred in this district.

## III. PARTIES

5. Plaintiff Eduardo Hernández is and was at all times mentioned herein, a prisoner of the State of California serving a sentence of LIFE with the possibility of parole in the custody of the California Department of Corrections and Rehabilitations (CDCR).

6. Defendant Jeffery A. Beard, is the current secretary of CDCR. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including PBSP.* He is being sued in his official capacity.

7. Defendant Mathew Cate, is the former Secretary of CDCR. He was and is legally responsible for the over-all operation of the Department and each institution under its jurisdiction, including PBSP. He is being sued in his official capacity.

8. Defendant Greorgy D. Lewis, is the former warden at PBSP. During his tenure, he was and is legally responsible for the safty and well-being of prisoners, the over-all operation, and/or the supervision discipline of all medical and correctional staff at PBSP. He is being sued in his individual and official capacity.

COMPLAINT

* Pelican Bay State Prison (PBSP).

-2-

9. Defendant Ron E. Barns, is the current warden at PBSP. He is legally responsible for the safty and well-being of prisoners, the over-all operation and/or the supervision and discipline of all medical and correctional staff at PBSP. He is sued in his official capacity.

10. Defendant Clark Ducart, is the current chief Deputy Warden (CDW) at PBSP. He is legally responsible for the safty and well-being of prisoners, the over-all operation, and/or the supervision and discipline of all medical and correctional staff at PBSP. He is being sued in his official capacity.

11. Defendant G.W. Olson, is a current Correctional Captain (Capt.) at PBSP. In this complaint he was and is responsible for reviewing an administrative appeal of staff misconduct. He is being sued in his individual and official capacity.

12. Defendant _____ Woods, is a former Capt. at PBSP. During his tenure and these events he was and is legally responsible for the safty and well-being of prisoners, and/or the supervision and disciplinary of all medical and correctional staff in SHU "D"-Facility at PBSP. He is being sued in his individual and official capacity.

13. Defendant _____ Vanderhoofven, is a current correctional lieutenant (L.T.) at PBSP. He was and is responsible of conducting the disciplinary hearing. He is being sued in his individual and official capacity.

COMPLAINT

-3-

14. Defendant        Tupy, is a current L.T. at PBSP. He was and is responsible for the safty and well-being of prisoners and/or the supervision of subordinate medical and correctional staff during these events. He is sued in his individual and official capacity.

15. Defendant        Cabrera, is a current correctional sergenant (Sgt.) at PBSP. He was and is responsible for the safty and well-being of prisoners and/or the supervision and discipline of subordinate medical and correctional staff during these events. He is sued in his individual and official capacity.

16. Defendant        Presler, is a current Sgt. at PBSP. He was and is responsible for the safty and well-being of prisoners housed in the Correctional Treatment Center (C.T.C) during his relevant mention herein. He is sued in his individual and official capacity.

17. Defendant        Butcher, is a current Sgt. at PBSP. He was and is responsible for the safty and well-being of prisoners housed in the C.T.C during his relevant mention herein. He is sued in his individual and official capacity.

18. Defendants    Pimentel,   Yang,   Clemons, and    Osten, are current Correctional Officers at PBSP. They are sued in there individual and official capacity.

19. Defendant        Reich, is a current correctional Officer (C.O.) at PBSP. She is responsible for the con-

COMPLAINT

fiscation of Plaintiffs' legal papers. She is sued in her individual and official capacity.

20. Defendants Nakamurra and Lentz are current Registered Nurses (R.N.) at PBSP. They were and are responsible for the initial First Aid and/or any Medical care in progress, during these events and/or any Medical emergencies at PBSP. They are sued in their individual and official capacity.

21. Defendant Creed is a current Liscensed Vocational Nurse (L.V.N) at PBSP. She was and is responsible as Medical First Responder to initiate First Aid and Medical care during these events and/or any medical emergencies at PBSP. She is sued in her individual and official capacity.

22. Defendant Maureen McLean, is the current (FNP) Chief Executive Officer (C.E.O) at PBSP. She was and is legally responsible for the over-all operation and/or supervision and discipline of all medical staff at PBSP. She is sued in her individual and official capacity.

23. Each defendant mentioned in this complaint, acted under the color of California law.

24. Defendants DOES 1-20, are each responsible in some manner for the constitutional violations and damages to Plaintiff alleged herein. The true names and capacities of defendants

-5-

DOES 1-20 are presently unknown to plaintiff. Plaintiff is informed and believes, therefore alleges on information and belif, that each of them is reponsible in some manner for the constitutional violations and damages to the plaintiff, alleged here in described. Plaintiff therefore sues DOES 1-20 by such fictitious names and will seek leave to amend this complaint to add their true names when the same have been ascertained.

## IV. INTRA-DISTRICT ASSIGNMENT

25. The events giving rise to this lawsuit took place in Del Norte County and thus, this case should be assiged to the San Francisco Division of the Northern District of California pursuant to Rule 3-2 (d) of the local Rules of the Northern District of California.

## V. INTRODUCTION OF FACTS

26. Plaintiff Eduardo Hernández, has been incarcerated in Californias' Pelican Bay State Prisons' Security Housing Unit (PBSP/SHU) for 15 years in solitary confinement in a cramped, concrete, windowless cell for 22 and-half to 24 hours a day without any human contact or interaction (physical) with any other prisoner similarly housed (Regulations forbid and do not allow this). Defendants primary goal in working or supervising these SHU units, is to maintain prisoners health, safty and security, yet what has lead to this Court action was the inten-

tional release of known segregated prisoners in different cells at the same time into the same area.

27. Plaintiff sues on his own behalf alleging that he was subjected to the excessive use of force, prolonged exposure to mace, denial/interference of medical care/aid, retalitory false charge to conceal abuse/confiscation of legal papers, denial of due process in subsequent proceeding and denial of follow-up medical care for injuries inflicted during the misuse of force in violation of the First, Eighth and Fourteenth Amendments to the Constitution and any others to come to light.

## VI. FACTS

28. On June 9, 2011 at approx. 7:50 p.m. defendant D. Yang ("D6" SHU unit control booth; operator of all the cell doors electronically) opened the plaintiff's cell door without explaination.

29. Plaintiff exited his cell to make his way towards the front section door where defendants J. Clemons, B. Newton and T. Osten where speaking up to defendant D. Yang who was knelt down looking and leaning downward from above in the control booth.

30. It is common practices for officials to release prisoners into the section when free of any other person(s) to receive medication from

COMPLAINT

medical staff at the Units section door.

31. It was Plaintiffs belief his cell door was opeded for his pending medication. As he made his way towards defendants, another prisoner was released into the section at which time an altercation ensued between Plaintiff and that prisoner.

32. The altercation immediately ended as the defendants J. Clemons, B. Newton and T. Osten commenced to continuously spray Plaintiff with excessive chemical agent.

33. Plaintiff immediately could not see or breath and only attempted to hold onto anything at an attempt to protect himself.

34. Defendant J. Clemons while continuously spraying repeatedly shouted "...shoot'em Shoot'em..." when defendant D. Yang complied, shooting Plaintiff with firearm (40mm launcher) striking him in the right leg and right foot (It is Plaintiffs belief that defendant J. Clemons fabricated his report and it was used by defendants as a templet to conceal that Plaintiffs injuries ie. broken foot **did** not result from staff).

35. Plaintiff immediately was knocked to the floor by these painful inpacts. The other prisoner by this time had exited the section to the ex-ercise yard which was closed there after. Booth he and Plaintiff being in separate secure

areas and Plaintiff on his stomach in prone position.

36. Plaintiff immediately requested for Medical staffs' assistance (First Aid) and/or assistance into the shower (a few feet away within section) as he lay bleeding unable to see, or stand in severe pain from the burning mace.

37. Instead of allowing Medical Staff to provide first aid and/or decontaminate plaintiff in the shower defendants DOES, J. Clemons and T. Cabrera began to shout out conflicting threats and/or instructions to plaintiff.

38. Defendant J. Clemons repeatedly threatend to spray the plaintiff more if he "...did not get the fuck-up and cuff-up...".

39. Defendant T. Cabrera at the same time shouted threats at Plaintiff to "...stay down or you will be fucken shot again..." repeatedly.

40. Plaintiff continued to repeatedly shout requesting for assistance that he "...could not stand or see and needed to be placed in the shower to wash off mace."

41. Plaintiff was ignored and forced to drag himself blindly for approx. 20ft. to the section front door were he had to pull himself up by the wall/door in order to stand at which time defendants DOES and J. Clemons grabbed and yanked his hands through the tray slot in the door causing an immediate jolt of pain in his right hands specifically to his thumb (re-injurying

COMPLAINT

Plaintiffs' thumb severely), Plaintiff shouted in extreme pain and defendant DOES and J. Clemons replied by yanking Plaintiffs' hands through tray slot stating: "... cuff the fuck-up!" while slamming the cuffs on him behind his back.

42. Defendants then had the section door opened and opposed to allowing Medical provided First aid and/or placing Plaintiff in shower (a few feet away) they proceeded to drag plaintiff out of the Unit up a corridor for approx. 150 yards, to corridor control. Plaintiff obviously needed first aid and could not stand or walk (Defendants own reports describe him as having "... large amounts of blood coming from his Face ..." therefore they were indifferent to his medical need)(Medical were Present).

43. As Plaintiff was being forcibly dragged he repeated requested to be placed in the shower and informed defendants that they were injurying him and that he could not stand or walk and needed Medical assistance.

44. Defendant DOES, J. Clemons and B. Newton ignored Plaintiffs' repeated pleas and continued to drag him up the corridor to a point infront of D. Facility corridor control where unknown officials where waiting (Plaintiff was unable to see due to the painful mace) with other defendant DOES with defendant G. Pimentel who began to give instructions and shouted repeated at those around for no-one "... to attend or wipe him off until he returned..."(with camera or for photographs)

-10-

referring to Plaintiff and injuries. Plaintiff immediat-
ely protested and repeated his request for decontamination
and medical assistance.

45. Defendant S. Nakamurra replied to defendant G.
Pimentel's order saying: "... I need to stop the bleeding
and look for other injuries..." defendant G. Pimentel repeated
for no-one "... to attend or wipe him off!" As this took
place Plaintiff continued to request and plead for
help as he was now being forcibly put onto a wooden
flat board on his back on his hands. At this time
Plaintiff **informed** defendants he would submit an appeal
for abuse. Defendants merely forced him down by the
chest and shoulders.

46. At this point it was approx. 8 p.m. when defendant
G. Pimetel left for camera. During this wait for defendant
G. Pimentels return, Plaintiff continued to repeatedly
request defendant DOES, Nakamurra, Lentz and Creed to
provide First Aid and to be properly washed off to be
decontaminated from the painful mace, that was now
causing him difficulty to breath. No-one replied to
Plaintiffs' pleas for help nor did they attend to his
injuries to his leg and foot.

47. Plaintiff began to gag due to being force on his
back he was drowning in his own mucus and sweat
caused by the excessive mace. In an attempt to
stop choking Plaintiff struggled to sit-up gagging
and coughing, defendants immediately placed their
hands on him forcibly shoving him back down into

COMPLAINT

and onto his hands smashing his left ring finger which caused him extreme pain. Plaintiff continued to have difficulty breathing, coughing up spit as he drown and choked on his mucus, again he attempted to sit-up as he pleaded with defendants that they broke his hand and without warning defendant s. Nakamurra put a rag over plaintiffs' mouth and nose as they again forcibly forced him back onto his hands causing plaintiff extreme pain and panic as they severely were hurting his now injured finger.

48. During this period Plaintiff was only able to hear and heard defendants T. Woods and R. Tupy speaking to defendant DOES (custody) who had been left to supervise until defendant G. Pimentels return.

49. Plaintiff called out to defendant T. Woods and R. Tupy by name and requested that they order Medical staff defendants to provide First Aid and/or to have someone decontaminate him from the painful mace.

50. Defendant T. Woods, R. Tupy and DOES did not reply and merely stopped speaking clearly indicating their indifference to Plaintiffs' extreme distress and need for Medical help.

51. Defendant R. Tupy later failed to report this and/or in effort to conceal that Plaintiffs' injuries (i.e. broken foot, ring finger and thumb) did not result from staff. Also neglecting to report plaintiffs' allegations.

52. Plaintiff repeatedly told defendants that they will be writen-up and held liable, as he requested

COMPLAINT

help stating they would be sued and fired.

53. One or more of defendants briefly laughed.

54. During this wait Plaintiff now knows this took place in SHU "D" facility clinic.

55. Defendant G. Pimentel returned to clinic approx. 1 hr. later to take photographs of plaintiff as medical staff defendants now begin assessment/care of his injuries without attempting to take plaintiff to a shower to be properly decontaminated from the painful burning mace.

56. Plaintiff was unable to open his eyes and believes and is informed that the medical staff defendants had the responsibility to report any of plaintiffs' allegations of abuse and to follow emergency responce policies which they failed to do.

57. As Plaintiff is photographed he again requests to be decontaminated and defendant Lentz or Creed reply: that there is no time as they wheele plaintiff to the Correctional Treatment Center (CTC) to be transported to hospital.

58. Once at the CTC an unknown medical staff told Plaintiff there was no-where to decontaminate him and there would be no time as she attempted to relieve his burning pain by squeezing a wet rag over him without much relief effect at that point the ambulance had arrived at approx. 9:30 p.m..

59. It is Plaintiffs' belief that there was more than enough time; during the approx. 1 hr. left unattended waiting for defendant G. Pimentels return for

photographs prior to ambulances arrival to provide
First Aid and decontaminate plaintiff.

60. This indifference was inpart to preserve crime
scene photos and there failure to report events
and/or fabricate them as some other way, is a
clear intential attempt to conceal these constit-
utional violations.

61. As Plaintiff was placed into the ambulance
(approx. 1hr. and a half after the altercation)
during the transport to the hospital the Paramedic
and custody were both effected by the fumes of
excess mace on Plaintiff.

62. Plaintiff asked paramedic for some type of re-
lief from the burning mace. Paramedic attempted
to have him open his eyes indicating that the
ambulance had no equipment to wash him off
and offered Plaintiff morphin to relieve the
pain. Paramedic gave him two separate 5mg.s
each shots of morphin which failed to ease the
burning pain.

63. Once Plaintiff arrived at the emergency room
at Sutter Coast Hospital the attending nurse
seen his distress and gave him a pain relief
pill which failed to work for the burning. She
indicated there was no-where to decontaminate
Plaintiff from the mace.

64. The nurse later brought some yogart to apply

-14-

on plaintiff's most visable effected areas of burning to attempt to relieve his pain.

65. The nurse then asked custody to wheele the Plaintiff to the ambulance dock were a nosol was above 20 ft. high and an attempt was made to wash Plaintiff off.

66. As Plaintiff sat naked in changes under the nosol the water only fell in a mist making the burning worse as it only re-activated the dry mace. Plaintiff was now returned to emergency room to be treated, still unable to open his eyes.

67. Plaintiff was assessed and treated with and for the following injuries:

    (a) Right Foot 2nd tarsal fracture;

    (b) Contusion right Foot;

    (c) laceration right midcalf anteriorly, abrasion right midcalf, contusion right midcalf;

    (d) Dislocation of the left 4th DIP joint;

    (e) Fracture of the right proximal phalanx of the thumb;

    (f) Multiple lacerations to the head;

    (g) Multiple abrasions to the scalp;

    (h) Multiple abrasions to the back;

    (i) sub-cm abrasion to the left upper extremity;

    (j) Chemical conjunctivitis secondary to pepper spray.

(SEE EXHIBIT A: EMERGENCY ROOM RECORD/REPORT ATTN: PG: 3 & 4)
(4 PAGES TOTAL).

68. On June 10, 2011 Plaintiff was transported back

COMPLAINT

to the Prison and arrived at approx. 3 A.M. admitted to the C.T.C. still in full change restraints approx. 7 hrs.

69. Plaintiff informed C.T.C. custody and medical staff that he needed to be properly decontaminated from the mace.

70. Medical Staff Escobar indicated that was a custody issue.

71. Plaintiff then spoke to custody officer Brunner who stated "...it was up to the sgt. ...".

72. Plaintiff directly asked defendant Butcher who was C.T.C. First watch Sgt. as Plaintiff was being placed into CTC cell.

73. Defendant Butcher told Plaintiff to "...wash off in the sink..." and left.

74. Plaintiff was in no way able to self-decontaminate in his sink with the multiple splits and sutures in his hand. He had a splint on left ring finger, sutures in the palm of same hand, splint on right thumb and a posterior short-leg splint on his right leg/foot. Obviously needing medical to assist for decontamination.

75. Plaintiff was unable to sleep and continued to request for C.T.C. officials names for complaint purposes.

76. Defendant Butcher as C.T.C. sgt. failed to allow Plaintiff to properly decontaminate from the dried on mace off him, which continued to cause him

COMPLAINT

1  severe pain as it re-activated with his move-
2  ments.
3  77. At approx. 6:30 A.M. Plaintiff contacted second
4  watch Custody and Medical staff to request for
5  the opportunity and assistance to properly be
6  decontaminated in a shower from the mace.
7  78. Defendant Presler as C.T.C. Sgt. told Plaintiff
8  "...You already have been decontaminated...
9  and all new arrivals at C.T.C. get routine showers
10  after 3 days..." indicating Plaintiff would not
11  be allowed assistance for and to decontaminate
12  in a shower.
13  79. Plaintiff then pursuant procedure made the
14  same request via an informal grievance request
15  and re-addressed defendant Presler, C.O. Kelley
16  accepted this request and later returned it at
17  approx. 8 A.M. indicating that defendant Presler
18  instruct him to reply to the request as follows:
19  "... You will be afforded the opportunity to shower
20  today (6·10·11) Third Watch." clearly refusing to
21  shower Plaintiff.
22  
23  80. At approx. 9 P.M. Plaintiff was contacted by
24  Physician and other medical staff to conduct an
25  admission evaluation accompanied by Custody
26  and defendant Presler taking place in Plaintiffs
27  cell.
28  81. During this evaluation Plaintiff informed the

COMPLAINT

physician and R.N. that he needed to be properly decont-
aminated from the dried on mace, that continued to
cause him painful discomfort.

82. Defendant Presler immediately interfeared by interupted
stating "...he was already decontaminated and was told
he would get a shower..." ending the evaluation clos-
ing the cell door, to then remove plaintiffs' restraints.

83. At approx. 3 p.m. (20 hrs after being maced) Plaintiff
was allowed to decontaminate in the CTC shower.

84. Plaintiff had to remain at the CTC for approx. 5 days
and was unnecessariely made to be restrained ev-
ery time Medical needed to provide daily treatments*
(up to 3 times) to his numerous injuries causing him
pain as he was made to cuff-up prior to opening.

85. During this CTC Stay Plaintiff was approched at
his cell door (176) by defendant Nakamurra who
was asking about plaintiffs' injuries at approx. 12
noon on June 12, 2011.

86. Plaintiff inquired of defendant Nakamurra what
were his reasons for not providing plaintiff immedi-
ate first aid or why he allowed defendant Pimentel
to interfear during the 6.9.11 Medical response after
the altercation and whether if he reported defendants
actions/interferance with Medical staff or the
abuse allegations.

87. Defendant Nakamurra stated to Plaintiff for him
"...not to worry about it..." he the returned to
the C.T.C office directly infront of Plaintiffs'

-18-

COMPLAINT

* PLAINTIFF HAD TO HAVE IX THERAPY AND WOUND CARE
AMOUNG TAKING PAIN MEDICATION.

view and cell (176) where defendant began
to speak to another unknown medical staff
about re-writing his report on plaintiffs'
incident of June 9, 2011

88. Defendant S. Nakamurra and Medical staff then
began to work on the computer for about or appox.
30 minutes it was clear this other staff member
was assisting in re-writing a report for the
defendant.

89. It is Plaintiffs' belief that defendant Naka-
murra has conspired to conceal the constitution
al violations herein described.

90. On June 14, 2011 at approx. 2 p.m. Plaintiff was
released from the CTC to return to SHU housing.

91. Defendant J. Clemons and unknown custody had
the duty to transport plaintiff to SHU housing.

92. During this transport defendant J. Clemons
made the following statements to plaintiff "...man
that shit really fucked you up... it was crazy
that guy stomped on your foot at the same time
you where shot... " and was laughing referring
to plaintiffs' broken foot suggesting it was
not a result of being shot (staff).

93. It is Plaintiffs' belief and informed that
defendant DOES, M. Creed, Lentz, Nakamurra,
J. Clemons, G. Pimentel, T. Woods, R. Tupy, T. Ca-
brera and B. Newton all conspired to conceal

COMPLAINT

the constitutional violations against Plaintiff. They had a duty and responsibility to intervien, and report to or on the allegations during the abuse and after complying with the Use of Force and Reporting Policies and Procedures, including both the application of the force and subsquent reporting and documentation requirements to a Use of firearm, causing great bodily injury (GBI).

94. Plaintiff made several writen requests to have the top of his right foot photograph to document the clear inprint of a 40mm inpact round that caused his broken foot (GBI). Due to defendant J. Clemons comment (SEE: PARAGRAPH 92 ABOVE).

95. These requests mostly went unanswered no photo was taken there after of this injury. Infact during an appeal interview with video interviewer refused to video Plaintiffs' foot.

96. On June 23, 2011 Plaintiff filed an administrative appeal/complaint pointing out the alleged physical abuse, Excessive Use of Force and Indifferance relevant to the above events.

97. Defendants G.D. Lewis and M. McLean denied this appeal/complaint.

98. Plaintiff was denied Medical care for subsquent care/treatment on injuries specifically to his foot and left ring finger, which is perminately damaged.

99. Since then, the plaintiff has submitted repeated requests and has filed an appeal on 8·7·2011.

100. Defendant M. McLean is responsible for providing specialized medical care and review appeals i.e. physical therapy.

101. Defendant M. Mclean denied Plaintiffs' appeal/complaint.

102. On 6·17·11 Plaintiff was served with a disciplinary charge of attempted murder for the altercation (SEE PARAGRAPHS 5-7 ABOVE).

103. Plaintiff postponed the hearing pending the resolution of criminal prosecution.

104. On 9·8·11 Plaintiff was informed the criminal prosecution was declined and that his disciplinary hearing could proceed as he was offered his procedural rights.

105. Plaintiff requested to be assigned; staff Assistant (S.A.) and an Investigative Employee (I.E.) inorder to locate and obtain documents, witnesses and statements.

106. Disciplinary Officer K. Welch stated that an I.E. would be forth-coming, but a S.A. would not be assigned and Plaintiff could provide I.E. with a complete list of witnesses.

107. On 9·15·11 Plaintiff was taken before defendant Vanderhoofven for the disciplinary hearing under protest.

108. Plaintiff informed defendant that he was not prepared nor had he seen by I.E. who he needed to obtain the listed documents on a request Plaintiff presented to the defendant, who inturn merely said that Plaintiff wouldn't be assigned an I.E. and that he would reply indicating those documents are irrelevant.

109. Plaintiff continued to protest and repeated his need to prepare with an I.E. and witnesses.

110. Defendant merely proceeded with hearing ignoring Plaintiffs' protests.

111. Plaintiff made the following protests for the hearing; Pointing out how could hearing officer reply on

COMPLAINT

staff reports when they are obviously fabricated to conceal that plaintiffs injuries resulted from staff, and that defendant J. Clemons report was used as a templet for other conspiring officials to use.

112. Plaintiff further pointed out that reports indicate that defendant J. Clemons is the primary reporter who describes events/incident from prior the altercation and on... this is impossible when defendants own supplemental report indicates that he "...responded to an audible alarm in D6..." and "...observed an altercation once there.

113. Defendant F. Vanderhoofven merely stated "...they just didn't do a good job on the reports..." and "... he had to find you guilty..." ending the hearing.

114. On 10·18·11 Plaintiff received the final copy of the hearing report which indicated a guilty of attempted murder based on staff reports.

115. Plaintiff was given a disposition of 360 day credit loss and referred to classification for SHU assessment (confinement)... Plaintiff was later assessed and sentenced to a 3 year SHU term ending 4·4·2014.

116. Defendant F. Vanderhoofven failed to document or considered Plaintiffs protests and argument during hearing.

117. Defendant F. Vanderhoofven's conclusion is not supported by reports which fail to state if plaintiff ever had a weapon in his hands at any time during the altercation.

COMPLAINT

118. Defendant Vanderhoofven reasoning for the denial for Plaintiffs request for witnesses, documents and I.E. is false, contradictory and/or makes no science.

119. Finally the staff reports fail to state any facts showing that the Plaintiff was attempting to murder anyone.

120. On 10-20-2011 pursuant to prison procedure; Plaintiff filed an administrative appeal for denial of Due Process pointing out that I.E., witnesses and evidence was denied and most importantly that the charge was not supported by evidence.

121. Defendant G.D. Lewis denied Plaintiffs appeal.

122. On 7-7-2011 Plaintiff wrote the Office of Internal Affairs (OIA) relevant to the 6-9-2011 incident.

123. On 6-29-2012 Defendant Reich removed several legal papers relevant to this cases preparation and she confiscated them targeting the following case law and Policies: (i) William v. Benjamin, 77 F.3d 765 (4th Cir. 1996); (ii) Clement v. Gomez, 298 F.3d 898 (C.A. 9 Cal. 2002); (iii) Robinson v. Prunty, 249 F.3d (9th Cir. 2001); (iv) PBSP- Use of Force Policy; (M) D.O.M.- Use of Force Procedure; (vi) D.O.M.- Incident Report Procedure. This case law and policies seemed to be defendants focus, the Court should note this material all relevant to the preparation relevant to plaintiffs case which he obtained through outside resources they did not belong

to (nor were pending over-due) the law Library and were never returned (Reason for cell-search was a fabrication).

124. Plaintiffs believes this confiscation of these specific legal papers is in direct result and in retaliation to the numerous complaints and appeals during and after the June 9, 2011 incident and preparation of suit.

125. Plaintiff contacted the OIA by letter on July 1st, 2012 to inquire if PBSP reported the 6.9.2011 incident and status of investigation, and/or His July 7, 2011 letter... Plaintiff also informed OIA in the July 1st, 2012 letter about latest confiscation of legal papers.

126. On 7.18.2012 pursuant to prison procedure; Plaintiff filed an administrative appeal/complaint pointing out the retaliation and confiscation of legal papers.

127. On or about 8.10.2012 Plaintiff was issued a CDC-128-B chrono authored by defendant G.W. Olson, giving him notice against contacting OIA and plaintiffs July 1, 2012 letter was attached and opened. To this day the OIA has failed to reply to plaintiffs letters of July 7, 2011 and of July 1st, 2012.

128. Defendant G.W. Olson denied Plaintiffs' July 7, 2012 retaliation administrative appeal/complaint.

## VII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

129. The Plaintiff has exhausted his administrative

COMPLAINT

-24-

remedies with respect to all claims and all defendants.

## VIII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

130. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1-129.

131. Defendants use of physical force against the plaintiff without need or provocation or failure to allow him to wash off mace prolonging his pain and suffering for approx. 20 hrs and not allowing medical staff attend his serious injuries or failure to intervien to prevent the prolonged and/or misuse of force, were done maliciously and sadistically and constituted crule and unusual punishment in violation of the Eighth Amendment of the U.S. Constitution. The use of physical force against plaintiff in restraints with the prolonged exposure of mace without need or provocation constituted the tort of assult and battery under the law of California.

### SECOND CAUSE OF ACTION

132. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1-129.

133. Defendants failure to provide plaintiff medical first aid or failure to intervien to provide first aid to stop his unnecessary and prolonged pain and suffering and failure to provide follow-up treatment for his

injuries constitutes deliberate indifference to the plaintiffs' serious medical needs in violation of the U.S. Constitution. These actions constitutes the tort of negligence under the law of California.

### THIRD CAUSE OF ACTION

134. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1–129.

135. Defendants failure to follow Security Housing Unit yard release procedure; failure to curb the known pattern of releasing known segregated rival prisoners into common areas at the same time, constitutes deliberate indifference to plaintiffs' and other prisoners' health and safety and contribuated to and proximately caused the above-described violation of Eighth Amendment rights of the U.S. Constitution.

### FOURTH CAUSE OF ACTION

136. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1–129.

137. Defendants intentional confiscation of plaintiffs' legal papers and their intentional omission or fabrication of reports or charges, inorder to conceal the true facts of events, constituted retaliation and interference with the right of access to courts in violation of the First Amendment of the U.S. Constitution. These actions did not advance

-26-

any legitimate penological goals or interest.

## FIFTH CAUSE OF ACTION

138. Plaintiff realleges and incorporates by reference each paragraphs 1-129.

139. Each defendant, or some among them, did conspire and agree to deprive plaintiff of his constitutional rights as alleged herein, in violation of 42 U.S.C. section 1983 and 1985.

## SIXTH CAUSE OF ACTION

140. Plaintiff realleges and incorporates by reference each allegation of paragraphs 1-129.

141. Defendants lack of impartiality during plaintiffs' disciplinary hearing; Failure to provide him staff assistance or Investigative employee; Failure to allow him prepare for hearing; Failure to martial facts with possible witnesses; Failure to give him a right to be heard; Failure to consider or document his complete defense and points; Failure to provide a non-contradictory, ambiguous, and inadequate disposition of charge; and knowingly upholding a false charge or decision deprives plaintiff of his state created liberty interest in violation of the Fourteenth Amendment of the U.S. Constitution.

## SEVENTH CAUSE OF ACTION

142. Plaintiff realleges and incorporates by refere-

COMPLAINT

1  nce each allegation of paragraphs 1-129.

2  143. Defendants have retained and imposed a 3
3  year SHU term segregation upon plaintiff on
4  the basis of fabricated, omitted, unreliable
5  and untrue staff reports; Failure to give him
6  an opportunity to properly present his views to
7  an impartial fact finder; and Failure to pro-
8  vide him staff assistance or an Investigative
9  employee inorder to martial the facts in his de-
10  fense while segregated, constitutes a significant
11  and atpical hardship, in violation of the Due
12  Process Clause of the Fourteenth Amendment
13  of the U.S. Constitution.

14  <u>EIGHTH CAUSE OF ACTION</u>

15

16  143. Plaintiff realleges and incorporates by reference each
17  allegation of paragraphs 1-129.

18  144. The extention and retention of plaintiff in SHU se-
19  gregation on the basis of unfair hearing and false
20  charges violates Article I sections 7 and 15 of the
21  California Constitution in that the segregation vio-
22  lates the Due Process of law.

23  <u>NINETH CAUSE OF ACTION</u>

24  145. Plaintiff realleges and incorporates by reference each
25  allegation of paragraphs 1-129.

26  146. The 3 year sentence and retention of plaintiff in
27  SHU segregation based on false charges and unfair
28  hearing violates California Penal Code section 2932,

COMPLAINT

- 28 -

1   which imposes a mandatory duty upon defendants, and
2   each of them, to afford due process protection to prisoners.
3   Wherefore defendants are liable pursuant to California
4   law.
5   147. Furthermore California Penal Code sections 147 and
6   673 imposes a mandatory duty upon defendants;
7   and each of them, to treat fairly and humanely and
8   to protect plaintiffs physical and mental well-being.

## TENTH CAUSE OF ACTION

10  148. Plaintiff realleges and incorporates by reference each
11  allegation of paragraphs 1-129.
12  149. Supervisory defendants have a duty to establish
13  policies and procedures for the administration of
14  Pelican Bay State Prison. Supervisory defendants
15  have a duty to train and supervise subordinate employees.
16  150. The system of policies and procedures were violated and/or
17  used to violate plaintiffs' rights as described in the pre-
18  ceding causes of action.
19  151. Supervisory defendants were deliberately indifferent
20  to the violations of plaintiffs' rights described herein.
21  152. Supervisory defendants breached their duties to
22  legally administer the prison, and to train and super-
23  vise subordinates where plaintiffs' rights were violated
24  as a result of defendants' acting in violation of defen-
25  dants' policies and practices, to the extent supervisory
26  defendants had actual and constructive knowledge of
27  the violations and did nothing to prevent or correct them.
28

COMPLAINT

## IX CAUSATION

As a direct and proximate result of the aforemented acts and omissions on the part of defendants, plaintiff has suffered serious physical harm, permanent harm and continues to suffer general and special damages in an amount to be proven at trail. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irresparably injured by the conduct of defendants unless the court grants the declaratory and injunctive relief which plaintiff seeks.

## X. PRAY FOR RELIEF

WHEREFORE, plaintiff respectfully prays for the following relief:

1) A declaratory judgment that the defendants' acts and practices described herein violated plaintiffs' rights as herein stated.

2) A preliminary and permanent injunction which prohibits and requires that defendants, employees and/or successors: (i) immediately arrange for the plaintiffs' examination by an outside physician to evaluate his left ring finger and right leg and foot; (ii) immediately arrange for the plaintiffs' need for any corrective physical therapy or other follow-up medical treatment(s) to be evaluated by an or the outside medical practitioner with expertise in

COMPLAINT

treatment and restoration of these types of injuries if needed; (iii) carry out without delay the treatment directed by such outside medical practitioner; (iv) cease the enforcement or practice of not allowing immediate on scene medical aid to prisoners; (v) cease the enforcement or practice of not allowing decontamination of maced prisoners immediately following the restoration of order; (vi) cease the practice of giving priority to preserving crime scene photos over medical aid and decontamination; (vii) cease the enforcement or practice of not following reporting requirement policies and procedures i.e. Medical Evaluation(s), Application of Force, Chemical Agents, Decontamination from Chemical Agents, Involved Staff..., Health Care Staff Use of Force..., Incident Commander..., Reporting Allegations of Unnecessary or Excessive Force, Allegations of Excessive or Unnecessary Force - Incident Commander and Appeals Coordinator...; (viii) give the plaintiff the opportunity to be heard; (ix) give the plaintiff the staff assistance and/or Investigative Employee in order to martial the facts, present, and/or interview possible witnesses; (x) expunge plaintiffs' file of any reference of this false charge herein stated and/or (xi) give the plaintiff a corrective subsequent hearing on those false charges with procedure

rights inorder and (xii) cease harassment, retalia-
tion and reprisals for plaintiffs' court litigation and
/or use of internal grievances with the return of
the confiscated legal papers defendant Riech
removed from plaintiffs' cell.

3) Award compensatory damages in the following
amounts:

(a) $100,000 jointly and severally for plaintiffs physical
and emotional injuries during defendants' excessive
use of force;

(b) $100,000 jointly and severally for plaintiffs
prolonged and emotional suffering and injuries
resulting from their failure to provide Medical
first aid to or decontamination of and adequ-
ate Medical care to the plaintiff;

(c) $50,000 jointly and severally for the punishment,
including deprivation of liberty and amenity, and
emotional injury resulting from their denial of
due process in connection with the plaintiffs'
disciplinary proceeding; and

(d) $30,000 jointly and severally for the retalitory
false charges and confiscation of legal papers
connected to these proceedings or preparation
of.

4) Award punitive damages from any defendant
found to have intentionally denied plaintiffs'

-32-

rights in the amount of $25,000 each.

5) Plaintiffs' cost of and filing suit.

6) For the costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1983 and any other grounds authorized by law.

7) For the appointment of attorney.

8) Trial by jury, including, to the extent that legitimate security concerns dictate, in judicial proceedings regarding the specific factual grounds that purportedly justify plaintiffs incarceration and SHU term.

9) For further relief the court deems just.

Respectfully Submitted,

Eduardo A. Hernández #J37244
Pelican Bay State Prison
P.O. Box 7500, D10/121
Crescent City, CA. 95532

Date: _____

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on

COMPLAINT